Commonwealth et al., Appellants, *v.* Germsback.

Argued April 10, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Emanuel F. Schifano*, Assistant City Solicitor, with him *Anne X. Alpern*, City Solicitor, for appellants.

*A. A. Bluestone*, for appellee.

*B. Vincent Imbrie*, for Pittsburgh Motor Club, amicus curiae.

OPINION BY HIRT, J., July 20, 1950:

This summary proceeding was initiated by an information brought before a committing magistrate presiding in the so-called "Traffic Court" located at North Euclid Avenue and Broad Street in the City of Pittsburgh. The information charged the defendant with violation of §1016(b) of The Vehicle Code, as amended by the Act of June 5, 1937, P. L. 1718, 75 PS §591. The specific charge was his failure to bring his automobile to a full stop, in compliance with an official "Thru Traffic Stop" sign on Hamlit Street at its juncture with

the Boulevard of the Allies in Pittsburgh before proceeding on to the boulevard. The defendant waived a hearing before the magistrate and, on his conviction in the Traffic Court, posted a bond and appealed to the County Court. The court, after hearing the charge de novo, quashed the information on defendant's motion, for the reason that the police magistrate, sitting at North Euclid Avenue and Broad Street in Pittsburgh was without jurisdiction in this proceeding charging a violation of §1016(b) at Hamlit Street and the Boulevard of the Allies. Notwithstanding that the defendant waived a hearing before the magistrate, this jurisdictional question was properly before the County Court on appeal. Lack of jurisdiction of a court may be taken advantage of at any stage of a proceeding. *Musselman's Appeal,* 101 Pa. 165; *Simpson's Estate,* 253 Pa. 217, 98 A. 35. The order will be affirmed.

On October 15, 1948, the date of the alleged offense, there were five police magistrates in the City of Pittsburgh who had been duly appointed by the Mayor of Pittsburgh pursuant to an ordinance enacted on the authority of the Second Class City Act of March 7, 1901, P. L. 20, art. XVI, §1, as amended, 53 PS §9561. Under an ordinance approved January 23, 1923, one of the five magistrates appointed by the Mayor was given the title of Traffic Court Magistrate, and was assigned to the hearing of all cases involving traffic violations. Under another city ordinance of the same date police officers in Pittsburgh were required to bring informations against persons "charged with violations of the automobile laws of the Commonwealth . . . and traffic ordinances . . . of the City . . . before the police magistrate known as the Traffic Court Magistrate". It was the intention of this municipal legislation to set up a magistrate's court specializing in the hearing and disposition of cases involving traffic violations in the City of Pittsburgh, whether of city ordinances or violations

of The Vehicle Code. And as directed by this ordinance the police officer who made the arrest in this case made information of the charge against the defendant, before John H. Donahue, Traffic Court Magistrate at North Euclid Avenue in Pittsburgh.

It cannot be questioned that the territorial jurisdiction of a police magistrate in the City of Pittsburgh extends throughout the entire city just as the general jurisdiction of a justice of the peace extends throughout the county of his election. And such police magistrate is not without jurisdiction of a summary proceeding on an information, if properly brought, charging a violation of The Vehicle Code. But the fact that an offense, cognizant before a police magistrate and within the territorial jurisdiction of the magistrate, is charged, is not necessarily sufficient to establish that the magistrate had jurisdiction of the specific offense set forth in the information. Cf. *Commonwealth v. Pa. Milk Prod. Corp.*, 141 Pa. Superior Ct. 282, 14 A. 2d 571. The legislature which clothed the city with authority to appoint police magistrates certainly may impose such limitations on the general territorial jurisdiction of all magistrates in any class of summary proceedings, as it chooses. And no ordinance of the city can supersede and nullify such restrictive legislation.

Section 1201(a) of The Vehicle Code as amended by the Act of June 27, 1939, P. L. 1135, 75 PS §731(a) imposes "Limitations of Actions" in summary proceedings based on violations of the Code, in this language: "Informations, charging violations of any of the summary provisions of this act, shall be brought before the nearest available magistrate within the city, borough, incorporated town, or township where the alleged violation occurred: Provided, however, That where there is no substantial difference between the respective distances from the place where the alleged violation occurred to the offices of more than one magistrate, any

such prosecution may be brought before any one of such magistrates . . ." By the mandate of §1201(a) jurisdiction in summary proceedings under The Vehicle Code is restricted to the available magistrate who is nearest to the place where the alleged violation occurred.

The above section of the Code is clear and unambiguous and must be given effect. In addition to the five appointed police magistrates there are about thirty-two elected aldermen in the City of Pittsburgh who as magistrates have general jurisdiction in summary proceedings involving Vehicle Code violations. The distance from the place where the alleged violation occurred and the Traffic Court was 3.2 miles. There were two available aldermen in the City of Pittsburgh whose offices were little more than one half that distance from the scene of the violation. The lower court therefore was right in quashing the information in this case on the ground that the Traffic Court magistrate did not have jurisdiction of the charge. Cf. *Commonwealth v. Zeigler,* 164 Pa. Superior Ct. 82, 63 A. 2d 128 and *Commonwealth v. Burall,* 146 Pa. Superior Ct. 525, 22 A. 2d 619, in both of which we gave effect to §1201 of the Act.

The Pittsburgh Motor Club in its brief, as amicus curiae supporting the order of the lower court, said: ". . . a legally constituted centralized traffic court, politically free and unhampered, and competently staffed and operated, should be a necessary adjunct of the law enforcement agencies in this Community. [The Motor Club] has advocated the establishment of such a Traffic Court in the City of Pittsburgh for many years. It feels that the presently constituted Traffic Court has no legislative sanction and, by way of local ordinance, has usurped powers which it has no lawful statutory right to exercise and is thereby limited in its ability to utilize the most modern methods and techniques which have proven effective elsewhere in saving lives". We are in accord with that view. The present method of prosecu-

tion in the Traffic Court in Pittsburgh over a quarter of a century may be evidence that it has functioned efficiently in proceedings involving violations of The Vehicle Code. But jurisdiction has been assumed by the Traffic Court magistrate in these cases which it did not possess. The arguments for relief sought by the appellants should be addressed to the legislature and not to the courts.

Order affirmed.